**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 31, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES of AMERICA,

     Plaintiff-Appellee,

v.

TARA N. WOLFE,

     Defendant-Appellant.

No. 04-2114

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-03-2056-JC)**

---

Joseph W. Gandert, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant Tara N. Wolfe.

Laura Fashing, Assistant United States Attorney (David C. Iglesias, United States Attorney, with her on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee United States of America.

---

Before **EBEL, McWILLIAMS**[*], and **MURPHY**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

     In this direct criminal appeal, Defendant-Appellant Tara N. Wolfe appeals

---

    [*]     Honorable Robert McWilliams, Senior Circuit Court Judge.

only her sentence, challenging the district court's decision to depart upward from the then-mandatory sentencing guideline range. In reversing and remanding for resentencing, we conclude the district court erred in departing upward based on factors that impermissibly double-counted facts that were already taken into account by the guidelines' calculation of the applicable sentencing range or by other departure factors. Further, the district court failed to explain the degree of its departure adequately. Therefore, we REVERSE and REMAND with instructions that the district court vacate the sentence and resentence Wolfe in accordance with this opinion. Because we conclude the district court erred in applying the guidelines to depart upward, we need not address whether the upward departure also was contrary to United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005).[1] On remand, however, resentencing will occur in light of the

---

[1]

     In Booker, the [Supreme] Court reaffirmed its holding in Apprendi [v. New Jersey, 530 U.S. 466 (2000)]: Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt. As a result, the Court held that mandatory application of the [federal sentencing] Guidelines violates the Sixth Amendment when judge-found facts, other than those of prior convictions, are employed to enhance a sentence.

United States v. Gonzalez-Huerta, 403 F.3d 727, 731 (10th Cir.) (en banc) (citation, quotations, alteration omitted), cert. denied, 126 S. Ct. 495 (2005). To remedy this constitutional problem with the federal sentencing guidelines, the Supreme Court excised several provisions of the Sentencing Reform Act to make

(continued...)

2

new discretionary guidelines sentencing regime established by <u>Booker</u>.

## I. FACTS

On September 25, 2002, Wolfe, who was then twenty-one years old, was drinking with five friends at the base of Sandia Mountain, on the Sandia Pueblo near Albuquerque, New Mexico. At 2:00 a.m., after having six or seven beers, Wolfe started to drive the group home. Driving too fast, she lost control and rolled the car. Two of the car's occupants died; Wolfe was seriously hurt; the three other occupants suffered minor injuries. Four hours after the crash, Wolfe's blood-alcohol level was measured at .13; the legal limit under New Mexico law is .08, <u>see</u> N.M. Stat. Ann. § 66-8-102(C).

Because the accident occurred "within the exterior boundaries of the Sandia Pueblo, in Indian country," and because Wolfe and both deceased victims were Native Americans, a federal grand jury indicted Wolfe on two counts of involuntary manslaughter, in violation of 18 U.S.C. §§ 13, 1112, and 1153.[2]

---

[1](...continued)
the guidelines advisory rather than mandatory. <u>See</u> <u>id.</u>

[2]     18 U.S.C. § 13(a), in part, provides that

[w]hoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 [defining "special maritime and territorial jurisdiction of the United States"] . . . is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State . . . in which such place is situated,

(continued...)

Wolfe pled guilty to both counts. The plea agreement underlying that guilty plea permitted the Government to file a motion for an upward departure at sentencing and also permitted Wolfe to file any motion pertaining to sentencing that she deemed necessary.

---

[2](...continued)
by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

New Mexico Stat. Ann. § 66-8-102 makes it "unlawful for a person who is under the influence of intoxicating liquor to drive a vehicle within" the State of New Mexico and further makes it "unlawful for a person who has an alcohol concentration of eight one hundredths or more in his blood or breath to drive a vehicle" in New Mexico. Id. § 66-8-102(A), (C).

18 U.S.C. § 1112 provides that

(a) Manslaughter is the unlawful killing of a human being without malice. It is of two kinds:

Voluntary–Upon a sudden quarrel or heat of passion.

Involuntary–In the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death.

(b) Within the special maritime and territorial jurisdiction of the United States,

. . . .

Whoever is guilty of involuntary manslaughter, shall be fined under this title or imprisoned not more than six years, or both.

Finally, 18 U.S.C. § 1153 provides for federal jurisdiction over any Indian who commits manslaughter against another Indian within Indian country.

The probation officer preparing the presentence report ("PSR") calculated

Wolfe's sentence using the 2001 United States Sentencing Guidelines,[3] and

determined that the applicable sentencing range was between twelve and eighteen

months' imprisonment. The district court adopted those calculations. Pursuant to

those calculations, the district court started with the base offense level for

involuntary manslaughter under U.S.S.G. § 2A1.4. Section 2A1.4 actually sets

forth two different base offense levels for involuntary manslaughter: "**10**, if the

conduct was criminally negligent; or . . . **14**, if the conduct was reckless." In this

case, the district court chose to apply the greater offense level, fourteen, for

reckless conduct. Pursuant to U.S.S.G. § 3D1.4, the court then added two levels

because there were multiple counts involved. And the court subtracted three

levels under U.S.S.G. § 3E1.1, for Wolfe's acceptance of responsibility. This left

Wolfe with a total offense level of thirteen. Wolfe's criminal history category

was I, reflecting no prior criminal history other than traffic tickets. That

combination of offense level and criminal history category resulted in a

sentencing range of twelve to eighteen months. See U.S.S.G. Sentencing Table.[4]

---

[3] The probation officer used the 2001 guidelines, which were in effect at the time the offenses occurred in 2002, because the officer determined that to use the 2003 guidelines in effect at the time of sentencing would result in an ex post facto violation. The parties do not challenge the decision to use the 2001 guidelines.

[4] Wolfe filed a motion for a downward departure, which the district

(continued...)

5

The Government filed a motion for an upward departure from that guideline range. See U.S.S.G. § 5K2.0. The district court granted that motion for three reasons:

[1]   Pursuant to United States Sentencing Guide[line] 5K2.0, Grounds for Departure, the Court finds the defendant's excessive recklessness in this case involved the defendant driving in excess of 100 miles per hour and was removing her hands from the steering wheel.

The Court finds a three-level departure is warranted for this factor.

[2] Pursuant to United States Sentencing Guideline 5K2.14, Public Welfare, the Court finds that the defendant's drunk driving did create a serious threat to the public welfare, as evident by the tragic deaths in this case. The Court finds that a three-level upward departure is warranted for this factor.

[3] Pursuant to United States Sentencing Guideline 5K2.0, the Court finds that because the instant offense involved two deaths, and this was not adequately taken into account by the involuntary manslaughter guidelines, the Court concludes that the defendant's conduct falls halfway between the recklessness that represents the heartland of involuntary manslaughter cases and the guideline that represents the second degree murder guideline.

In comparing the two guidelines, the Court finds that the difference in the second degree murder guideline and the involuntary manslaughter guideline is nine levels.

Based on these findings, the Court determines that the defendant's total adjusted offense level [of 13] should be increased by nine levels. An offense level of 22 combined with a criminal history category of I results in a guideline imprisonment range of 41 to 51

---

[4](...continued)
court denied. Wolfe does not appeal that decision.

6

months.  The Court notes that the defendant was drunk driving, which resulted in the deaths of two individuals.

The district court then imposed two forty-one-month sentences to run concurrently.

Wolfe appeals, challenging only her sentence.  This court has jurisdiction to consider this appeal under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## II.   ISSUES

### A.   Inadequate notice of district court's intent to depart upward.

As an initial matter, Wolfe argues that the district court failed to give her adequate notice that the court was considering an upward departure from the applicable guideline range.  Because we are already remanding for resentencing on other issues, we need not address this issue here.  See United States v. Whiteskunk, 162 F.3d 1244, 1254 (10th Cir. 1998).

> [S]ince we have already determined a remand is necessary on other grounds, it is unnecessary for us to decide whether the district court failed to give adequate notice of its intent and basis to depart or whether any potential failure of notice was reversible error.  If the defendant suffered as a result of the district court's failure to give notice . . . , then the resentencing hearing following remand will cure the alleged harm.  The defendant is now clearly on notice the district court is considering an upward departure and the bases for that departure.

Id.

### B.   Application of the guidelines to depart upward.

Wolfe argues that the district court misapplied the guidelines to justify its

7

decision to depart upward. We agree.

## 1. Standard of review.

Wolfe objected at sentencing to the district court's decision to depart upward from the applicable guideline range. Even after <u>Booker</u>, "[w]hen reviewing a district court's application of the Sentencing Guidelines, we review legal questions <u>de novo</u> and we review any factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." <u>United States v. Martinez</u>, 418 F.3d 1130, 1133 (10th Cir.) (quoting <u>United States v. Doe</u>, 398 F.3d 1254, 1257 (10th Cir. 2005)), <u>cert. denied</u>, 126 S. Ct. 841 (2005). In specifically reviewing upward departures, this court employs a four-part test, examining:

> (1) whether the factual circumstances supporting a departure are permissible departure factors; (2) whether the departure factors relied upon by the district court remove the defendant from the applicable Guideline heartland thus warranting a departure; (3) whether the record sufficiently supports the factual basis underlying the departure; and (4) whether the degree of departure is reasonable.

<u>Whiteskunk</u>, 162 F.3d at 1249; <u>see also</u> <u>United States v. Serrata</u>, 425 F.3d 886, 911-12 (10th Cir. 2005) (applying this four-factor standard post-<u>Booker</u> to review district court's downward departure imposed pre-<u>Booker</u>). "All of these steps are subject to a unitary abuse of discretion standard." <u>Whiteskunk</u>, 162 F.3d at 1249. That "unitary abuse-of-discretion standard" involves

> review to determine that the [district court's] discretion . . . was not

8

guided by erroneous legal conclusions.  This standard limits appellate courts' scope of review, leaving district courts with much of their traditional sentencing discretion.  The essential nature of the question presented [on appeal], whether legal or factual, guides our standard of review.  In the usual case, where the court's decision whether to depart rests on factual findings, the district court's decision is entitled to substantial deference.  If, however, the district court's decision rests primarily on a legal conclusion, for instance whether a factor is a permissible ground for departure, the appellate court's review is plenary.

Id. (quotations, citations, alterations omitted).[5]

---

[5]    Prior to Congress's enacting the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 ("PROTECT Act"), this court reviewed sentencing departures by applying this four-part test and reviewing under the "unitary abuse of discretion" standard.  See United States v. Jones, 332 F.3d 1294, 1299 (10th Cir. 2003).  In 2003, however, the PROTECT Act changed this court's standard for reviewing upward departures from the unitary abuse-of-discretion standard to de novo review.  See id. (applying 18 U.S.C. § 3742(e)).  Even then, this court continued to applied this four-part test.  See id. at 1299-1300.

Booker has now excised the statutory provision requiring this court to review upward departures de novo.  See Booker, 125 S. Ct. at 764 (excising 18 U.S.C. § 3742(e)); see also Serrata, 425 F.3d at 912.  After Booker, therefore, this court has returned to reviewing the district court's pre-Booker decision to depart upward under the unitary abuse-of-discretion standard.  See Martinez, 418 F.3d at 1133 & n.3; see also Serrata, 425 F.3d at 911-12 (applying unitary abuse-of-discretion standard post-Booker to review pre-Booker downward departure).

We also note that in Booker, the Supreme "Court concluded that the implicit standard of review that remained for all sentences is 'review for unreasonableness.'"  Martinez, 418 F.3d at 1133 n. 3 (quoting Booker, 125 S. Ct. at 765).  Nevertheless, this court has concluded that "such review is inappropriate for a sentence imposed prior to Booker."  Id.; see also Serrata, 425 F.3d at 912.  That is because, prior to Booker, the district courts were imposing sentences

(continued...)

9

In addition,

> [i]n reviewing the district court's . . . departure, we recognize that
> before Booker these discretionary departures were considered against
> a mandatory sentencing scheme, while after Booker the guidelines
> are entirely advisory. . . . [I]n the context of our review of [a]
> discretionary degree-of-departure question, we are informed by, and
> must take account of, the fact that the district court would have
> enhanced discretion upon remand after Booker.

Serrata, 425 F.3d at 912 (reviewing pre-Booker downward departure).

### 2.    District court's decision to depart upward.

A sentencing court is permitted to depart from the Guidelines
after determining a defendant's offense level, criminal history category,
and the applicable Guideline range "if the court finds 'that there exists
an aggravating or mitigating circumstance of a kind, or to a degree, not
adequately taken into consideration by the Sentencing Commission in
formulating the guidelines.'" U.S.S.G. § 5K2.0 (quoting 18 U.S.C.
§ 3553(b)).[6] The district court must distinguish whether the case falls

---

[5](...continued)
under the mandatory guideline scheme. See United States v. Souser, 405 F.3d
1162, 1165 (10th Cir. 2005). Therefore, "reviewing for reasonableness–a
standard of review compatible only with the review of a discretionary decision
below–is inappropriate." Id. In such cases, then, we still "apply the pre-Booker
standard of review." Id. That remains true in this case as well, where the district
court pre-Booker exercised only limited discretion to depart upward within an
otherwise mandatory sentencing scheme. See Martinez, 418 F.3d at 1133 n. 3.

[6]     In full, 18 U.S.C. § 3553(b)(1) provides:

Except as provided in paragraph (2) [concerning child crimes and
sexual offenses], the court shall impose a sentence of the kind, and
within the range, referred to in subsection (a)(4) [referring to the
applicable sentencing guideline range] *unless the court finds that there
exists an aggravating or mitigating circumstance of a kind, or to a
degree, not adequately taken into consideration by the Sentencing*
(continued...)

10

under the category of a "heartland case" or an "unusual case." See Koon [v. United States, 518 U.S. 81, 93 (1996)]. In Koon, the [Supreme] Court explained the Sentencing Commission intended for sentencing courts to treat each guideline as carving out a "heartland", a set of typical cases embodying the conduct that each guideline describes. If the case falls outside the heartland (i.e., is not the usual type of case), the court may decide to depart from the prescribed sentencing range.

When deciding whether to depart from the Guidelines, the district court may not consider certain forbidden factors [such as race, sex, national origin, creed, religion, socioeconomic status, lack of guidance as a youth, drug or alcohol dependence, and economic duress].

---

[6](...continued)

*Commission in formulating the guidelines that should result in a sentence different from that described.* In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission. In the absence of the applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2) [referring to factors such as the need for a sentence to reflect the seriousness of the offense, afford adequate deterrence, protect the public and provide the defendant with necessary treatment]. In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by the guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission.

18 U.S.C. § 3553(b)(1) (emphasis added). In Booker, however, the Supreme Court excised 18 U.S.C. § 3553(b)(1) in order to make the sentencing guidelines advisory rather than mandatory. See Booker, 125 S. Ct. at 764. Nonetheless, because Booker's intent was to make the guidelines advisory rather than mandatory, and because the continuing validity of U.S.S.G. § 5K2.0 providing for upward departures does not conflict with Booker, we do not deem the Court's excising § 3553(b)(1) also to invalidate upward departures. See United States v. Sierra-Castillo, 405 F.3d 932, 939 n. 5 (10th Cir. 2005).

11

Otherwise, the Sentencing Guidelines do not limit or restrict the grounds available for departure. The Guidelines also list factors that are encouraged factors for departure. If the factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account. If the factor is a discouraged factor, or one already taken into account under the Guidelines, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. It is up to the district court to determine whether certain factors take the case out of the "heartland," and make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing.

Whiteskunk,162 F.3d at 1248-49 (citations, quotations, original footnotes omitted;

footnote added).

> **a.     Whether the factors on which the district court based its upward departure were permissible factors, supported by an adequate factual basis, that took Wolfe's case outside the heartland of involuntary-manslaughter convictions.**

We address together the first three prongs of the four-part test for

reviewing departures, considering: whether the district court relied upon

permissible factors; if so, whether there was a sufficient factual basis to support

the district court's reliance on those factors; and whether the factors took Wolfe's

case outside the heartland of involuntary-manslaughter convictions.

The first inquiry, whether a departure factor is a permissible factor upon

which the district court can depart upward, is a legal question which we afford

plenary review. See Whiteskunk, 162 F.3d at 1249. In addition,

[i]n determining whether a defendant's actions justify departure under

12

a particular factor, we must discern whether the record sufficiently supports the factual basis underlying the departure. In doing so, we ascertain whether the circumstances cited by the district court to justify departure actually exist in the instant case, requiring us to search only for a sufficient factual basis to justify the departure.

United States v. Neal, 249 F.3d 1251, 1261 (10th Cir. 2001) (quotations, citations omitted). Further, the third inquiry, whether the facts of a particular case are sufficient to take this case outside the guidelines' heartland of similar cases, is a factual inquiry which this court reviews for an abuse of discretion. See Whiteskunk, 162 F.3d at 1252-53.

In this case, the district court departed upward based upon three factors: (1) Wolfe's conduct—driving over 100 miles per hour while removing her hands from the steering wheel—was excessively reckless; (2) her drunk driving presented a serious danger to the public welfare; and (3) her drunk driving resulted in two deaths.[7] We address each of those factors in turn.

---

[7] On appeal, Wolfe also appears to challenge the district court's noting at sentencing that "[i]f [Wolfe's] blood alcohol was .13 four hours later, [her] blood alcohol was probably closer to .2 at the time of the accident." While the district court made this comment as it began to sentence Wolfe, the court did not make this remark specifically when the court was addressing its decision to depart upward from the applicable guideline range. Therefore, we conclude that the district court did not use this factual finding, if it was one, to depart upward. Cf. United States v. Jose-Gonzalez, 291 F.3d 697, 701 (10th Cir. 2002) (holding that, although district court "observed that Defendant displayed a disregard for human life and dignity . . . it is clear that the departure was based solely on" other factors); Whiteskunk, 162 F.3d at 1249-50 (although district court mentioned at sentencing that defendant's conduct had caused a death and cited to guideline

(continued...)

### i. Wolfe's excessive recklessness.

The district court specifically departed upward three offense levels because "the Court finds the defendant's excessive recklessness in this case involved defendant driving in excess of 100 miles per hour and was removing her hands from the steering wheel." In this case, the guideline calculation had already taken into account the fact that Wolfe's conduct was reckless. The guideline addressing involuntary manslaughter contains two different base offense levels: "**10**, if the conduct was criminally negligent; or . . . **14**, if the conduct was reckless." U.S.S.G. § 2A1.4. In calculating Wolfe's sentence under this guideline, the district court chose to apply the fourteen-level base offense for reckless conduct. Further, § 2A1.4's application note provides that

> "[r]eckless" refers to a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation. The term thus includes all, or nearly all, convictions for involuntary manslaughter under 18 U.S.C. § 1112. A homicide resulting from driving, or similarly dangerous actions, while under the influence of alcohol or drugs ordinarily should be treated as reckless.

U.S.S.G. § 2A1.4, application note 1.

---

[7](...continued)
provision permitting an upward departure on that basis, this court concluded that the district court did not in fact rely on this factor to depart upward because the district court never mentioned death or the relevant guideline provision again and the record indicated that the district court instead specifically relied on other factors to depart upward).

Nevertheless, "[r]ecklessness exceeding the Guideline standard is a permissible factor for the district courts to consider for departure." Whiteskunk, 162 F.3d at 1250; see also Jones, 332 F.3d at 1301-02. "Indeed, an extra measure of criminal depravity is precisely the type of factual circumstance the departure mechanism is designed to address, inasmuch as the degree of recklessness bears heavily on the seriousness of the offense." Jones, 332 F.3d at 1302 (quotations, alteration, citation omitted). Therefore,

> [e]ven though the involuntary manslaughter Guideline already contemplates reckless conduct and the usual case of drunk driving resulting in death, we nonetheless hold that a district court may still examine the degree of recklessness in a given case to determine whether this factor exists to such an exceptional level that it takes the case outside the "heartland" of usual involuntary manslaughter cases.

Whiteskunk, 162 F.3d at 1250. This was, then, a permissible factor on which the district court could depart upward. See Jones, 332 F.3d at 1301-02; Whiteskunk, 162 F.3d at 1250.

We next consider whether there was a factual basis in the record to support the specific facts on which the district court relied to determine that Wolfe's conduct was excessively reckless, that she was driving over 100 miles per hour and lifting her hands off the steering wheel. The only evidence in the record to support these specific factual findings was the PSR, which listed these facts. But Wolfe never objected to the PSR including these facts. Those unobjected-to facts provide a sufficient factual basis to support this departure factor.

15

In relying on these unobjected-to facts from the PSR, we recognize that post-Booker this court has refused to treat unobjected-to PSR facts as admitted for Sixth Amendment Booker purposes. See United States v. Bass, 411 F.3d 1198, 1204 & n.7 (10th Cir.2005), cert. denied, 2006 WL 37951 (2006) (No. 05-7912). Nevertheless, outside the Booker context, we will still rely on unobjected-to facts for other sentencing purposes.

"Prior to Booker, we regularly held that the failure to object to a fact in a presentence report, or failure to object at the sentencing hearing, acts as an admission of fact." Bass, 411 F.3d at 1204 n.7 (quotations, alterations omitted). In Bass, we declined to treat a defendant's failure to object to facts in the PSR as an admission for Sixth Amendment Booker purposes. See id. But Bass did not, and could not, overturn our pre-Booker precedent addressing the application of guidelines, including departures from the applicable guideline range, that specifically permitted the district court to rely on unobjected-to facts in the PSR to apply those guidelines. We remain bound by that pre-Booker precedent.

Further, our reliance on these unobjected-to facts for sentencing purposes outside the Booker context is consistent with Fed. R. Crim. P. 32(i)(3)(A), which provides that "[a]t sentencing, the court . . . may accept any undisputed portion of the presentence report as a finding of fact." Booker has not relieved a defendant of his obligation under Rule 32(i)(3)(A) to point out factual inaccuracies included

16

in the PSR.  And requiring a defendant to challenge any factual inaccuracies in the PSR before or during sentencing permits the district court to address those objections at a time and place when the district court is able to resolve those challenges.

We therefore accept the unobjected-to facts in the PSR as admitted for sentencing purposes outside the Booker context.  In this case, however, the PSR actually contained two contradictory statements addressing the speed at which Wolfe was driving immediately prior to the accident.  In paragraph eight, the PSR noted that "[i]t was determined through the investigation that [Wolfe] was operating the vehicle at a high rate of speed and removing her hands from the steering wheel.  The approximate speed calculated during the investigation was 112 miles per hour."  But later, in paragraph eleven, the PSR indicated that

> [d]eputies interviewed Juan Mendez [, a surviving occupant of the car,] who informed that [Wolfe] had been drinking and she was driving 85 miles per hour when she let go of the steering wheel while playing around.  As the vehicle approached the curve [Wolfe] reached for the steering wheel.  The next thing Mendez knew is that they had been involved in an accident.

The district court, in finding that Wolfe was driving in excess of 100 miles per hour, did not explain how it made that factual finding, in light of the contradictory statements contained in the PSR.  Because of the PSR's contradictory statements regarding Wolfe's speed, there is an insufficient factual basis to support the district court's finding that Wolfe was driving over 100 miles

17

per hour. On remand, the district court may be able to reconcile these apparently contradictory statements in the PSR. The district court might, instead, conclude that Wolfe's driving drunk, even at eighty-five miles per hour, while lifting her hand off the steering wheel still amounts to excessive recklessness sufficient to remove Wolfe's case from the heartland of involuntary-manslaughter convictions. We leave this for the district court to address on remand.

### ii. Wolfe's conduct posed a serious danger to the public welfare.

The district court specifically departed upward three more levels because "the defendant's drunk driving did create a serious threat to the public welfare, as evident by the tragic deaths in this case." The district court based this upward departure on U.S.S.G. § 5K2.14, which is a guidelines' policy statement indicating that "[i]f national security, public health, or safety was significantly endangered, the court may increase the sentence above the guideline range to reflect the nature and circumstances of the offense." In light of the policy statement, then, this factor is one that the guidelines encourage district courts to use as a ground for upward departures. See Whiteskunk, 162 F.3d at 1248-49. Therefore, in departing upward, "[the] district court [could] properly consider the degree of danger to public safety created by [Wolfe's] conduct." Jones, 332 F.3d at 1301 (quotations omitted). Because it is an encouraged factor, the district court could depart upward on this basis so long as the guidelines did not already

18

take this factor into account; or if the guidelines did already take this factor into account, the district court could still depart on this basis if it is present in this case "to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." Whiteskunk, 162 F.3d at 1248-49.

In relying on this factor, however, the district court did not cite to any facts other than the fact that two "tragic deaths [occurred] in this case." Because the district court did not cite to any additional justification for a departure based on a serious threat to the public, the district court's first upward departure for excessive reckless would have taken into account any threat to the public welfare caused by Wolfe's drunk driving. We have now directed the district court to reconsider its first factor–that Wolfe's conduct was excessively reckless–in light of the contradictory statements in the PSR about the speed at which she was driving at the time of the accident. If the district court, on remand, again determines that Wolfe's conduct was excessively reckless, then the court could not depart upward a second time based upon its determination that that same conduct also posed a threat to public safety. See generally United States v. Checora, 175 F.3d 782, 794 (10th Cir. 1999) (noting, in the context of applying a double-counting analysis to a departure factor, "[i]mpermissible double counting or cumulative sentencing occurs when the same conduct on the part of the defendant is used to support separate increases under separate enhancement

19

provisions which necessarily overlap, are indistinct, and serve identical purposes") (quotations omitted). On the other hand, if the district court determines that Wolfe's conduct was not excessively reckless, then the district court could properly consider departing upward based upon the significant threat Wolfe's conduct posed to the public. Thus, the district court should also reconsider this departure factor on remand. However, as explained below, the district court cannot depart upward based on the significant risk Wolfe's conduct posed to the public if that determination is based solely on the fact that two people died as a result of Wolfe's actions.

### iii.    Wolfe's conduct resulted in multiple deaths.

The district court departed upward three more levels[8] "because the instant offense involved two deaths, and this was not adequately taken into account by

---

[8]    At sentencing, the district court indicated that it was departing upward to the middle of the guideline range applicable to second-degree murder based upon the fact that Wolfe's offenses involved two deaths. That resulted in a nine-level increase. But because the district court departed upward a total of nine levels and had already indicated that it was departing upward six levels because Wolfe's conduct was excessively reckless and posed a serious threat to public safety, it appears that the district court was actually departing upward just three levels based on the fact that Wolfe's conduct resulted in two deaths.

the involuntary manslaughter guidelines." The district court based this departure

on U.S.S.G. § 5K2.0, which provides that

> the court may depart from the guidelines, even though the reason for the departure is taken into consideration in determining the guideline range . . . , if the court determines that, in light of unusual circumstances, the weight attached to that factor under the guidelines is inadequate or excessive.
>
> Where, for example, the applicable offense guidelines and adjustments do take into consideration a factor listed in this subpart, departure from the applicable guidelines range is warranted only if the factor is present to a degree substantially in excess of that which ordinarily is involved in the offense.

U.S.S.G. § 5K2.0. In addition, § 5K2.1 is a policy statement that suggests that

"[i]f death resulted, the court may increase the sentence above the authorized

guideline range." So "[t]he Guidelines [do] encourage consideration of

death . . . as [a] ground[] for departure." Jose-Gonzalez, 291 F.3d at 702; see also

Jones, 332 F.3d at 1302; Whiteskunk, 162 F.3d at 1250. Thus, "[t]he court is

authorized to depart for such encouraged factors as long as the Guidelines do not

already take them into account," Jose-Gonzalez, 291 F.3d at 702, or, if the

guidelines do take it into account, if the factor exists in this case to an

extraordinary degree, see Whiteskunk, 162 F.3d at 1249.

Here, however, the base offense level for involuntary manslaughter already

reflects the fact that death occurred. See Jones, 332 F.3d at 1302; Whiteskunk,

162 F.3d at 1249. Moreover, while the base offense level for involuntary

21

manslaughter did not specifically take into account that Wolfe's conduct resulted in *two* deaths, the district court accounted for that fact when it applied U.S.S.G. § 3D1.4 to add two levels to the base offense level because Wolfe's criminal conduct involved multiple counts.[9] And by its very definition, two counts of involuntary manslaughter will involve two deaths. See Whiteskunk, 162 F.3d at 1249-50. Further, the district court did not give any reasons why the two deaths in this case existed "to a degree substantially in excess of that which is ordinarily involved" in conduct resulting in two involuntary-manslaughter convictions. U.S.S.G. § 5K2.0. Cf. Jones, 332 F.3d at 1302 (upholding decision to depart upward based upon "the unusual circumstance of killing an entire family").

Therefore, "the fact that multiple deaths occurred, standing alone, cannot

---

[9] U.S.S.G. § 3D1.1 requires the district court, "[w]hen a defendant has been convicted of more than one count . . . [to] [g]roup the counts resulting in conviction into distinct Groups of Closely Related Counts ("Groups") . . . [and] determine the offense level applicable to each Group . . . ." U.S.S.G. § 3D1.1(a)(1), (2). U.S.S.G. § 3D1.2 provides that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group. Counts involve the same harm within the meaning of this rule . . . [w]hen counts involve the same victim and the same act or transaction." Here, however, because there were two victims, the PSR determined there were two separate groups. See U.S.S.G. § 3D1.2, application note 3; see also Jose-Gonzalez, 291 F.3d at 707. U.S.S.G. § 3D1.4 then provides that "[t]he combined offense level is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by the amount indicated in the . . . table" provided. In this case, because the two Groups, based on the same crime but involving two different victims, are "equally serious," § 3D1.4's table required the district court to add two levels to the base offense level for the deaths of both victims.

22

support the district court's decision to depart in this case." Jones, 332 F.3d at 1302. The district court thus impermissibly double counted when it departed upward three levels because Wolfe's conduct resulted in two deaths, when the guideline calculation had already accounted for the two deaths.[10]

### iv. Conclusion.

The district court departed upward for three specific reasons. In doing so, the district court erred by relying on a factor supported only by contradictory statements in the PSR and double-counting the same factors several times.

### b. Degree of district court's departure.

---

[10]    In Whiteskunk, this court in dicta noted that "[m]ultiple deaths resulting from defendant's conduct . . . [does] present[] a permissible ground for departure from the standard involuntary manslaughter Guideline range." 162 F.3d at 1250. Nonetheless, "multiple deaths did not occur in" Whiteskunk. Id. In this case, not only did the base offense level for involuntary manslaughter take into account the fact that Wolfe's conduct resulted in death, but that offense level was already enhanced because Wolfe's conduct involved two counts of involuntary manslaughter.

This case is also distinguishable from Jose-Gonzalez. In that case, the district court departed upward from the applicable guideline offense level for unlawfully transporting illegal aliens. See id. at 698-99. There, this court affirmed the district court's decision to depart upward based upon multiple deaths and injuries occurring as a result of the offense. See id. at 702-03. This court determined that, while the relevant guidelines took into account the fact that the defendant was transporting more than five illegal aliens, and further took into account the fact that "a death" occurred during the offense, those calculations did not take into account that multiple deaths and injuries had occurred. See id. at 701-03. Therefore, an upward departure for multiple deaths was appropriate. See id. at 703. In this case, in contrast, the guideline calculations themselves took into account that Wolfe's conduct resulted in two deaths.

23

Because we must remand for resentencing, we will only briefly address the fourth prong of the analysis for reviewing upward departures, inquiring whether the degree of departure the district court chose was reasonable. This court's review of the degree of the district court's departure is "deferential." Whiteskunk, 162 F.3d at 1253. "[W]e . . . consider the district court's proffered justifications [for the departure], as well as such factors as: the seriousness of the offense, the need for just punishment, deterrence, protection of the public, correctional treatment, the sentencing pattern of the Guidelines, and the need to avoid unwarranted sentencing disparities." Martinez, 418 F.3d at 1133 (quotations omitted). Because we have already concluded that the district court erred in departing upward based upon the three departure factors on which it relied, clearly the district court's analysis will be different on remand. Therefore, we briefly address only two issues concerning the degree of departure.

First, we note that the district court's decision to depart upward a total of nine offense levels amounts to an extraordinary departure. We are hard pressed to find a case where the district court has departed upward by nine levels. See United States v. Hurlich, 348 F.3d 1219, 1222 (10th Cir. 2003) (holding eight-level upward departure did not amount to plain-error warranting relief); Jones, 332 F.3d at 1307 (upholding seven-level departure); United States v. Goldberg, 295 F.3d 1133, 1142 (10th Cir. 2002) (noting eight-level departure "is

24

remarkable and must be reserved for truly extraordinary cases").

Second, although the district court explained how it arrived at this substantial nine-level departure, it gave two different explanations. The district court initially indicated that the three departure factors it relied upon each warranted a three-level upward departure. The district court, however, did not explain *why* each of those factors specifically warranted a three-level increase.

Later, the district court appears to have justified its total nine-level upward departure instead by explaining that Wolfe's

> conduct falls halfway between the recklessness that represents the heartland of involuntary manslaughter cases and the guideline that represents the second degree murder guideline.

> In comparing the two guidelines, the Court finds that the difference in the second degree murder guideline and the involuntary manslaughter guideline is nine levels.[11]

> Based on these findings, the Court determines that the defendant's total adjusted offense level should be increased nine levels.

> Murder, either first or second degree, involves "the unlawful killing of a

---

[11]   The difference between the base offense levels for second-degree murder and involuntary manslaughter resulting from reckless conduct appears, instead, to be nineteen levels. See U.S.S.G § 2A1.2 (providing a base offense level of thirty-three for second-degree murder); id. § 2A1.4(a)(2) (providing a base offense level of fourteen for involuntary manslaughter resulting from reckless conduct). We understand the overall tenor of the district court's discussion to indicate that Wolfe's conduct fell halfway between second-degree murder and involuntary manslaughter resulting from reckless conduct.

25

human being with malice aforethought." 18 U.S.C. § 1111(a). In contrast, manslaughter, both voluntary and involuntary, involves "the unlawful killing of a human being without malice." 18 U.S.C. § 1112(a). Therefore, "[t]he presence or absence of malice mark[s] the boundary which separates the [federal] crimes of murder and manslaughter." United States v. Serawop, 410 F.3d 656, 662 (10th Cir. 2005). "Malice is not satisfied simply by killing with an intentional or reckless mental state; instead, malice specifically requires committing the wrongful act without justification, excuse or mitigation." Id. at 664.

The sentencing guidelines track these distinctions. See United States v. Hanson, 264 F.3d 988, 996 (10th Cir. 2001) (addressing guidelines establishing offense levels for first- and second-degree murder). The guidelines addressing the various degrees of unlawful killing provide the following range of base offense levels: a base offense level of forty-three for first-degree murder, U.S.S.G. § 2A1.1; a base offense level of thirty-three for second-degree murder, id. § 2A1.2; a base offense level of twenty-five for voluntary manslaughter, id. § 2A1.3; a base offense level of fourteen for involuntary manslaughter involving recklessness, id. § 2A1.4(a)(2); and a base offense level of ten for involuntary manslaughter involving criminal negligence, id. § 2A1.4(a)(1).

The district court in this case, in departing upward from the involuntary-manslaughter range halfway to the range provided for second-degree

murder, never explained why Wolfe's conduct, which resulted in two involuntary-manslaughter convictions, should instead be treated as more like second-degree murder involving malice aforethought.[12]  In Jones, this court affirmed the district court's seven-level upward departure for involuntary manslaughter convictions resulting from the defendant's drunk driving.  See 332 F.3d at 1297-98, 1307.  There, however, the district court specifically explained that, in light of the defendant's five prior drunk driving convictions, his conduct in continuing to drink and drive "approached a deliberate or intentional act."  Id. at 1306 n. 18 (quotation, alteration omitted) (analogizing drunk driving to using a dangerous weapon).

In this case, then, the district court gave two different justifications for its nine-level departure, neither of which the court fully explained.  "Articulation of the factual basis for upwardly departing does not automatically suffice to explain

---

[12]    "[A]nalogizing to other guidelines is a primary method by which district courts may justify the reasonableness of their departure." Neal, 249 F.3d at 1258.  Nonetheless, the district court cannot simply depart upward "based in actuality on the contention that the offense of conviction is more properly characterized as another, closely related offense."  Hanson, 264 F.3d at 995.  In Hanson, for example, we held that the district court, in imposing a sentence for second-degree murder, could not depart upward because the murder was premeditated, which would essentially recharacterize the offense of conviction from second-degree to first-degree murder.  See id. at 995-96.  It does not appear that the district court was doing that in this case, although because the district court did not explain why it chose to depart to the halfway-point between the involuntary manslaughter involving recklessness range and the second-degree murder range, we cannot say for sure.

27

the degree of departure. Simply restating the justification for upward departure does not fulfill the separate requirement of stating the reasons for imposing the particular sentence." United States v. Proffit, 304 F.3d 1001, 1012 (10th Cir. 2002) (quotations, citations omitted). "We do not require the district court to justify the degree of departure with mathematical exactitude, but we do require the justification to include some method of analogy, extrapolation or reference to the sentencing guidelines." Whiteskunk, 162 F.3d at 1254 (quotations omitted).

In this case, the district court departed upward to an extraordinary degree without sufficient explanation. That, too, justifies a remand for resentencing. See id. at 1254-55.

## III.  CONCLUSION

For the foregoing reasons, we REVERSE and REMAND with instructions that the district court vacate Wolfe's sentence and resentence her in accordance with this decision.