**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 10, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

RIADH ABDUL RAHMAN
DALLAH,

    Defendant - Appellant.

No. 05-5158
(N.D. Oklahoma)
(D.Ct. No. 04-CR-218-001-HDC)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **HENRY**, **BRISCOE**, and **O'BRIEN**, Circuit Judges.

_____

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

On December 13, 2004, a one-count indictment charged Riadh Dallah with international parental kidnapping in violation of 18 U.S.C. § 1204(a). He pled

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

guilty and subsequently was sentenced to thirty-six months imprisonment followed by one year of supervised release. The district court adopted the presentence report's (PSR) observation that the kidnapping offense was ongoing. The court therefore 1) denied him a downward adjustment for acceptance of responsibility and 2) imposed a maximum sentence notwithstanding the sentencing guidelines. Dallah claims the court erred in so doing. Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we AFFIRM.

Background

Dallah and his wife, Lama Hijazi-Dallah, were married in Syria on May 13, 1993. The couple relocated to the United States and had two children. Dallah started several successful companies, primarily based on his association with the International House of Pancakes (IHOP). In 2001, Dallah filed for divorce. A lengthy and contested divorce ensued. Under the provisions of a temporary custody order, Dallah had custody of the two children, but Hijazi-Dallah was to have three overnight visits with the children each week.

On December 26, 2003, after spending three days with her children, Lama Hijazi-Dallah returned them to Dallah. Three days later, Dallah telephoned Hijazi-Dallah to inform her he was in Syria with the children, he had shipped all his belongings to Syria and he intended to remain there permanently. A short time later, Hijazi-Dallah discovered a handwritten letter from Dallah in her mailbox dated December 25, 2003. The letter advised her that he had sold the

stock he held through IHOP, resigned from his job, closed his office, cancelled his United States residency, relinquished his home to the bank, sold his car and shipped his belongings to Syria where he intended to live with the children, "like a king." (Vol. II, ¶ 8.) He also wrote, "I will no longer pursue any litigation as no decision of the court in the US will concern me . . . as I will never contemplate returning, NEVER . . . ." (*Id.*) Dallah's removal of the children from the United States violated the visitation order in Tulsa County District Court Case No. FD-2001-3944.[1] On January 5, 2004, the Tulsa County district judge granted Hijazi-Dallah temporary custody of the children.

On December 10, 2004, Dallah arrived in the United States on a flight from Italy, at which time he was arrested by the Bureau of Immigration and Customs Enforcement at the John F. Kennedy International Airport in New York.[2] Dallah was held in custody continually after his arrest. The children remained in Syria.

Dallah's indictment charged he "unlawfully and intentionally removed to Syria from the United States, . . . the children of [his] marriage . . . in violation of custody and visitation rights, . . . with the intent that [the] children should remain in Syria permanently." (Vol. I, Doc. 1.) Dallah pled guilty on April 2, 2005,

---

[1] 18 U.S.C. § 1204(a) provides: "Whoever removes a child from the United States, or attempts to do so, or retains a child (who has been in the United States) outside the United States with intent to obstruct the lawful exercise of parental rights shall be fined under this title or imprisoned not more than 3 years, or both."

[2] The reason for Dallah's return to the United States is not explained in the record.

admitting to both the fact of removal in violation of the custody order and his intent to remove the children permanently. Using the 2003 Sentencing Guideline, the PSR assigned a base offense level of 14 pursuant to USSG §2J1.2. The report did not recommend an adjustment for acceptance of responsibility because "[Dallah] continues to be in violation of the offense to which he entered a guilty plea" and "has not demonstrated any intention of returning the children to the United States." (Vol. II at ¶ 21.) The PSR concluded "[t]he defendant's ongoing conduct is simply not consistent with acceptance of responsibility and outweighs the fact he entered a guilty plea." (*Id*.) Based on a total offense level of 14 and a criminal history category of I, the guideline range for imprisonment was fifteen to twenty-one months. Under 18 U.S.C. § 1204(a), the maximum term of imprisonment is thirty-six months.

The PSR also identified one factor "that may warrant a departure [from] the otherwise applicable guideline range." (Vol. II, ¶ 55.) The PSR stated:

> In this case, a departure under USSG §5K2.0(a)(2)(B), Unidentified Circumstances, may be appropriate. The applicable guideline for this offense, USSG §2J1.2, Obstruction of Justice, generally covers a defendant's obstructive conduct in the administration of justice that is complete and not the unusual case of preventing a parent legal access to her children as provided in a state court in a pending divorce case. In addition, in this case, the defendant's offense was lengthy and remains ongoing in nature. He has never brought his children back to the United States so that he would be in compliance with the child custody provisions of his pending divorce case . . . . Although the guidelines calculations deny the defendant a reduction for acceptance of responsibility because he has not complied with the court order . . . and his criminal conduct is ongoing, the Court may determine that an upward departure in the offense level is warranted.

-4-

(*Id.*, ¶ 56.) The PSR further suggested, "[t]he Court may determine that a sentence up to the statutory maximum is reasonable because of the duration of this offense and the fact that there is no indication that the defendant will comply with the court order in the near future." (*Id.*, ¶ 57.) Dallah objected to the factual basis of the PSR's recommendation, complaining its conclusion that he had not demonstrated any intention of returning the children "presumes that Mr. Dallah can return the children while he is incarcerated," and such a "presumption is not supported by any proof." (Appellant's Br. at 6.)

At sentencing, the district court asked Dallah if he had "seen the presentence report and found it accurate and correct," to which Dallah responded, "Yes, sir." (Vol. IV at 2.) Defense counsel reiterated Dallah's objection to the PSR, suggesting Dallah's ability to return the children to the United States may not be "legally feasible." (*Id.* at 4.) Addressing this argument, the court asked defense counsel, "Are you suggesting they couldn't voluntarily return?" (*Id.*) Defense counsel admitted he did not know, but stated it was his belief that Dallah had initiated and completed an action in the Syrian courts that would render any order in Oklahoma incapable of securing the return of the children. (*Id.* at 4-6.)

The court considered the Sentencing Guidelines as advisory only, applied the factors set forth in 18 U.S.C. § 3553(a), and sentenced Dallah to the statutory maximum of thirty-six months imprisonment — a sentence exceeding the guideline computation by fifteen months. The district court explained the

sentence was appropriate to meet the sentencing goals because "preventing a parent legal access to her child as provided by the state court in a pending divorce case" is not the usual case of obstruction of justice. (*Id*. at 8.) It further explained:

> [T]he defendant's offense is ongoing in nature, beyond the duration of the offense. As stated, he has no intention of complying with the court's order that he has obstructed in this case. To this date the children have been kept away from their mother for more than 18 months.

(*Id*. at 8-9.)[3] Following the imposition of his sentence, Dallah timely filed this appeal.

Discussion

Dallah argues his sentence is unreasonable because the district court imposed a sentence based on a fact not proven by the government.[4] Thus, the

---

[3] The district court earlier explained what it meant by an ongoing offense stating, "This is a continuing - - not a continuing offense, but the result of it is continuing, and I appreciate the difficulties that the mother has had, not being able to see her children for so long." (Vol. IV at 7.) We agree with the district court's description. A "continuing offense" is a specific legal term meaning "an offense that involves a prolonged course of conduct, . . . not complete until the conduct has run its course." *United States v. Dunne*, 324 F.3d 1158, 1164 (10th Cir. 2003) (internal citations and quotations omitted). Unlike a continuing offense, an offense under 18 U.S.C. § 1204(a) is complete as soon as a child is removed from the United States or retained outside the United States with an intent to obstruct the law. *See United States v. Ventre*, 338 F.3d 1047, 1054 (9th Cir. 2003). The consequences of the offense continue for as long as the children remain outside the United States.

[4] Dallah does not claim a sentence of thirty-six months imprisonment is unreasonable or improper had the government proved Dallah's continuing intent to keep the children in Syria.

only question on appeal is whether the government presented sufficient evidence to support the district court's conclusion that Dallah has not demonstrated any intention of returning the children.

Despite the ultimate standard of review for "reasonableness" mandated under *United States v. Booker,* 543 U.S. 220 (2005), our first step is to "review factual findings for clear error and legal determinations de novo," – the traditional standard in considering the district court's application of the guidelines. *United States v. Mares*, 441 F.3d 1152, 1159-60 (10th Cir. 2006); *United States v. Kristl,* 437 F.3d 1050, 1054 (10th Cir. 2006). "[If] we determine under the appropriate standard of review that the district court correctly determined the relevant Guidelines range, and if the defendant was subsequently sentenced to a term of imprisonment within that range, then the sentence is entitled to a rebuttable presumption of reasonableness on appeal." *Kristl*, 437 F.3d at 1054. However, if we determine the district court erred in applying the guidelines, "we must remand - without reaching the question of reasonableness - unless the error is harmless." *Id*. at 1054-55.

Traditional departure analysis also informs any debate about the reasonableness of a sentence. *United States v. Sierra-Castillo*, 405 F.3d 932, 936 n.2 (10th Cir. 2005) (post-*Booker* district courts should continue to apply the guidelines departure provisions in appropriate cases). When reviewing upward departures, we are guided by a four-part test. *United States v. Wolfe*, 435 F.3d

1289, 1295 (10th Cir. 2006).  We examine:

> (1) whether the factual circumstances supporting a departure are permissible departure factors; (2) whether the departure factors relied upon by the district court remove the defendant from the applicable Guideline heartland thus warranting a departure; (3) whether the record sufficiently supports the factual basis underlying the departure; and (4) whether the degree of departure is reasonable.

*Id*. (quoting *United States* v. *Whiteskunk,* 162 F.3d 1244, 1249 (10th Cir. 1998)). As stated above, Dallah contests only the third factor of this test.  He claims the government failed to introduce any evidence that he was able to return the children after his arrest and therefore, the district court's conclusion impermissibly shifted the burden of proof to him.  Thus, we must determine "whether the circumstances cited by the district court to justify departure actually exist in the instant case" or whether there was an insufficient factual basis to justify the departure.  *Id*. at 1297.

When the court considers an upward sentence enhancement or departure under the guidelines, the government bears the burden of proving the factual basis for the increase by a preponderance of the evidence.  *United States v. Crockett*, 435 F.3d 1305, 1319 (10th Cir. 2006) ("Under an advisory Guidelines regime, a conviction, by itself, authorizes a sentence up to the statutory maximum.  Thus, the facts guiding the district court's exercise of discretion need not be found beyond a reasonable doubt.").  We accept as true any fact recited in the PSR, unless the defendant objects to that fact, in determining whether a sufficient

-8-

factual basis exists for a departure. *Wolfe*, 435 F.3d at 1299.[5]  However, if a factual finding in the PSR is disputed at sentencing, it must be resolved in accordance with Rule 32(i)(3)(B) of the Federal Rules of Criminal Procedure,[6] which requires the sentencing court to rule on any disputed portions of the PSR that will affect the sentence.  Simply adopting the findings of the PSR will not satisfy the court's obligation under Rule 32.  *United States v. Guzman,* 318 F.3d 1191, 1198 (10th Cir. 2003).  A ruling on a disputed issue "must be definite and clear," but it "need not be exhaustively detailed."  *United States v. Williams,* 374 F.3d 941, 947 n.9 (10th Cir. 2004).

Contrary to Dallah's assertion, the government did not need to provide direct evidence that Dallah had the ability to return the children to the United States after his arrest.  The sentencing judge is no less a "trier of fact" than a juror at trial.  Therefore, our rules regarding permissible inferences applies equally to the situation before us.  A trier of fact is permitted to infer "that a person intends the natural and probable consequence of acts knowingly done or

---

[5]  In *United States v. Bass*, we noted an exception to this rule when the defendant is sentenced under pre-Booker mandatory guidelines.  411 F.3d 1198, 1204 n. 7 (10th Cir. 2005) (a failure to object does not operate as an "admission of fact" for purposes of the rights announced in *Booker*.), *cert. denied*, 126 S.Ct. 1106 (2006).  Here, however, Dallah was sentenced under the post-*Booker* advisory guidelines.

[6] Rule 32(i)(3)(B) provides that the sentencing court "must — for any disputed portion of the presentence report or other controverted matter — rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing."

knowingly omitted." *United States v. Lawrence*, 405 F.3d 888, 899-900 (10th Cir.), *cert. denied*, 126 S.Ct. 468 (2005). A permissive inference "is valid if there is a rational connection between the fact that the prosecution proved and the ultimate fact presumed, and the latter is more likely than not to flow from the former." *United States v. Badilla*, 383 F.3d 1137, 1140 (10th Cir. 2004), *vacated* 543 U.S. 1098, *holding reinstated* 419 F.3d 1128, 1131-32 (10th Cir. 2005), *cert. denied*, 126 S.Ct. 1344 (2006). "Because [a] permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the [preponderance of the evidence] standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference." *County Court of Ulster County, N.Y. v. Allen,* 442 U.S. 140, 157 (1979).

The factual basis in this case begins with Dallah's admission that he took the children with the intent to keep them permanently in Syria. His agreement with the underlying facts stated in the PSR is also an admission that he wrote the letter to his wife stating he would not be affected by any legal proceeding in the United States. In addition, at sentencing, defense counsel explained that his doubt as to whether the children could return pursuant to a United States court order was based on the proceedings initiated by Dallah in Syria – a further indication that Dallah was very serious when he said he would not return the

children in spite of any court order from Oklahoma.[7] The consistency of Dallah's actions up to the time of his arrest, nearly a year after he kidnapped the children, leaves no doubt of his intent during that period of time. Eight months later, at the time of his sentencing, Dallah had shown no remorse. No contrary evidence was presented. Under these facts, Dallah's intent to continue to avoid the Oklahoma custody order and prevent the children from returning to their mother may be inferred from his deliberate actions and their known consequences. Such an inference is entirely permissible, supported by the facts, and ultimately rational. We have no trouble concluding the district court was presented with a sufficient factual basis to determine Dallah had no intention of complying with the state court's order he had obstructed.

The district court's sentencing decision would pass muster under our traditional departure analysis and is, therefore, reasonable. Moreover, we find no error in the district court's determination, on the same basis, to refuse to apply a downward adjustment for acceptance of responsibility. As Dallah raises no other

---

[7] We note that the First Circuit has upheld a district court's order that the defendant comply with the outstanding orders of the state courts by returning his children to this country as a condition of supervised release. *See United States v. Raheman-Fazal*, 355 F.3d 40, 55-56 (1st Cir.), *cert. denied*, 543 U.S. 856 (2004); *United States v. Raheman-Fazal*, 130 Fed. Appx. 485, 486 (1st Cir.), *cert. denied*, 126 S.Ct. 247 (2005) (unpublished).

objections to his sentence, we AFFIRM.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge
