**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 7, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

CARNESHA POWELL,

      Defendant-Appellant.

No. 08-6187
(D.C. No. 5:07-CR-00320-L-5)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **EBEL**, and **O'BRIEN**, Circuit Judges.

A jury convicted Defendant-Appellant, Carnesha Powell, of aiding and

abetting bank fraud in violation of 18 U.S.C. § 1344(1) and 2. Following her

conviction, the district court sentenced Ms. Powell to 13 months' imprisonment.

Ms. Powell appeals her sentence, arguing that the district court committed plain

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

error in its calculation of the losses she intended to cause the bank. We exercise

jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.[1]

## I. Background

Carnesha Powell was convicted of bank fraud in connection with her

participation in an "empty envelope" scheme. The scheme worked as follows.

Ms. Powell opened an account at the Bank of Oklahoma on December 16, 2004.

She initially deposited $100 into the account (the minimum required to open a

new account), but withdrew $80 the subsequent day. After receiving her

ATM/debit card, Ms. Powell gave the card to her cousin, Bernita Clark. Ms.

Clark then turned over the card to Jerry Bailey, her boyfriend and the

"mastermind" of this scheme. Mr. Bailey used the card to submit a "deposit" in a

bank ATM. He told the machine he was depositing $9800 and submitted an

envelope, but the envelope was empty. That evening, someone withdrew $120

from Powell's account. The following morning, an additional $300 was

withdrawn from the account. The trio then went to Wal-Mart, where they

purchased $4000 in gift cards that they divided among themselves. Finally, they

used the ATM/debit card to purchase some gas after leaving the Wal-Mart.

In the presentence report ("PSR"), the government stated that Ms. Powell

---

[1] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

intended to cause the bank $9800 in losses, the amount purportedly deposited, and calculated Ms. Powell's guidelines offense level accordingly. By focusing on the "intended loss" of $9800 as opposed to the "actual loss" of just over $4400, the district court added two additional offense-level points to Ms. Powell's conduct. Ms. Powell did not object to that calculation at any time before the district court. On appeal, however, Ms. Powell now argues that the district court committed plain error in deciding that she intended to cause the bank a $9800 loss.

## II. Discussion

Section 2B1.1 of the United States Sentencing Guidelines ("USSG") provides that the base offense level for a crime involving, inter alia, "fraud and deceit" is 7. The guidelines provide that 2 points should be added if the defendant caused between $5,000 and $10,000 in losses. The comments define "loss" as "the greater of actual loss or intended loss." Id. cmt. n.3. "Intended loss," in turn, includes "the pecuniary harm that was intended to result from the offense . . . [even] harm that would have been impossible or unlikely to occur." Id.

Ms. Powell argues on appeal that the district court committed plain error by determining that she intended to cause $9800 in losses to the bank. Ms. Powell argues that there was insufficient evidence that she ever knew the amount that Mr. Bailey deposited into the account, let alone that she intended to ultimately withdraw that amount from the account. Finally, she argues that her actions,

which caused just over $4400 in losses, demonstrate that she never intended to cause any additional losses to the bank.

The 2 additional points at issue here did not raise Ms. Powell's sentencing guidelines range above the statutory maximum, so her failure to object to the factual predicate for this enhancement before the district court functions as a waiver of her right to appeal that issue. See United States v. West, 550 F.3d 952, 957 n.3 (10th Cir. 2008) ("Outside the Sixth Amendment Booker context, Fed. R. Crim. P. 32 continues to require a defendant, at or before sentencing, to make specific objections to facts contained in the PSR. If a defendant fails to make such an objection, we will deem him to have waived any dispute regarding the facts set forth in the PSR.") (citations and quotations omitted); United States v. Wolfe, 435 F.3d 1289, 1299 (10th Cir. 2006) ("[O]utside the Booker context, we will still rely on unobjected-to facts for [] sentencing purposes."). Ms. Powell's appeal in this case is based on a distinctly factual question: Did she intend to cause $9800 in loss? Because she failed to challenge that factual assertion in the PSR before the district court, she cannot challenge it here.

Further, even if this court were not to consider her arguments waived, we would still conclude, under a plain error analysis, that the district court did not err in determining, by a preponderance of the evidence, that Ms. Powell intended $9800 in loss. Mr. Bailey, her co-conspirator, testified that he showed Ms. Powell the receipt from his empty envelope deposit, so she was aware that he had

deposited $9800 into her account.  Further, he testified that he told her that, after he made the deposit, "I'll show you the receipt how much is in your account, because the deposit is available in 24 hours."  This evidence indicates that Ms. Powell's account reflected that she had $9800, when in fact she did not, and that this amount would be available to her to spend within 24 hours.  Given her participation in this scheme and her obvious desire to defraud the bank, this evidence is sufficient to establish that, once she became aware of the amount of the deposit, she intended that the scheme would cause $9800 in losses to the bank.

Ms. Powell argues that the fact that she and Mr. Bailey withdrew just over $4400 from the account and then discarded the ATM/debit card demonstrates that she never intended to withdraw the full amount.  However, it appears more likely that they discarded the ATM/debit card before withdrawing the full amount because Mr. Bailey knew that they would be unable to withdraw more than $500 in cash or make more than $5000 in purchases before the bank discovered the fraud.  Ryan Kerr, a branch manager for the Bank of Oklahoma, testified that, after "depositing" a $9800 empty envelope, a cardholder would "have access to $5,000 worth of purchases on your debit card and $500 withdrawal on your ATM card."  Mr. Bailey, whose testimony indicated that he was fairly familiar with how an "empty envelope" scheme worked, was likely aware of this limitation. While there was no evidence that he informed Ms. Powell of this limitation in advance, it appears likely that after making about $4000 in purchases and $400 in

withdrawals, amounts suspiciously close to the maximum they were able to spend, Mr. Bailey decided to discard the ATM/debit card. Mr. Bailey may, at this point, have informed Ms. Powell that she would have been unable to withdraw much more of the money before being discovered. The result does not change even if, as Mr. Bailey repeatedly testified, he kept Ms. Powell in the dark about the details of the fraud, and instead made decisions without informing her of his reasons. In either case, given the practical limitations on Ms Powell's ability to withdraw much more of the money from her account, her failure to do so does not demonstrate that she intended merely to cause just over $4400 in losses.[1]

## III. Conclusion

For the foregoing reasons, this court AFFIRMS Ms. Powell's sentence.


ENTERED FOR THE COURT


David M. Ebel
Circuit Judge

---

[1] The fact that Ms. Powell was unable to cause more than $5500 in losses does not affect the outcome here for two reasons. First, that amount is sufficient to sustain the 2-point enhancement in this case. See U.S.S.G. § 2B1.1. Second, the guidelines specifically provide that "intended loss" includes "harm that would have been impossible or unlikely to occur." Id. at cmt.3.