**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 24, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

CARL LYNN HOPKINS, also known
as Carl Hopkins,

     Defendant-Appellant.

No. 06-4193
(D.Ct. No. 2:05-CR-931-TC)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, and **BARRETT** and **BRORBY**, Senior
Circuit Judges.

     After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1.9(G). The case is

therefore ordered submitted without oral argument.

     Appellant Carl Lynn Hopkins pled guilty to one count of being a convicted

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

domestic violence offender in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(9). He now appeals his forty-six-month sentence, challenging the district court's grant of an upward departure, its denial of his request for a downward departure, and the reasonableness of his sentence pursuant to 18 U.S.C. § 3553(a). We lack jurisdiction to review the denial of the request for a downward departure and otherwise exercise jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291 for the purpose of affirming Mr. Hopkins's conviction and sentence.

## I. Factual Background

On December 10, 2005, police officers responded to an aggravated domestic violence incident at Mr. Hopkins's home. Mr. Hopkins's wife and two stepsons reported Mr. Hopkins stabbed one stepson, discharged a handgun toward all of them through the front door, and threatened them with violence. According to the injured stepson, he and Mr. Hopkins were arguing when Mr. Hopkins yelled he was going to get his gun. Both stepsons stopped Mr. Hopkins from leaving through the front door. Mr. Hopkins then went into the kitchen, grabbed two knives, and stabbed one stepson in the stomach; he also followed the same stepson into the kitchen and continued to attempt to stab him. Mr. Hopkins then left the house but immediately returned and shot at the door. Police recovered a .40-caliber bullet just inside the front door and a spent casing on the front porch.

Police stopped Mr. Hopkins in his vehicle and, following his arrest, found two butcher knives and a .40-caliber handgun in his vehicle. After receiving a *Miranda* warning, Mr. Hopkins talked about the stabbing, admitting he "stuck" one stepson with the knife and stating, "I wanted him to move, and he did, so it worked. I hoped it would hurt him." R., Vol. 3 at 2-3 (¶¶ 5, 9). He also stated he fired a round through the door "like John Wayne does in the movies," and "[i]f I could of seen any of the fuckers, I would have shot them, but I couldn't." *Id.* at 2 (¶ 5). Later, during his booking, Mr. Hopkins also stated, "If I would have known it would come to this, I would of killed all the fuckers. I mean it's the same in the end, isn't it?" and "If I got out of here now, shouldn't I just go back and shoot every one of them?" *Id.* at 2 (¶ 6).

## II. Procedural Background

After Mr. Hopkins pled guilty to one count of being a convicted domestic violence offender in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(9), the probation officer prepared a presentence report providing information on Mr. Hopkins's offense conduct and prior criminal history and calculating his sentence under the applicable United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."). The probation officer: 1) set his base offense level at fourteen pursuant to U.S.S.G. § 2K2.1(a)(6) because Mr. Hopkins qualified as a person prohibited from possession of a firearm; 2) increased his base level four

levels pursuant to U.S.S.G. § 2K2.1(b)(6) for use or possession of a firearm or ammunition in connection with his offense of aggravated assault; and 3) reduced his offense level by three levels for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, resulting in a total offense level of fifteen.

In calculating Mr. Hopkins's criminal history, the probation officer pointed out Mr. Hopkins possessed three prior misdemeanor convictions, for a total of four criminal history points and a criminal history category of III. These convictions included: 1) a 1996 misdemeanor conspiracy conviction, which under U.S.S.G. § 4A1.1 added one criminal history point; 2) a 1998 misdemeanor conviction for discharging a weapon where a person might be endangered, when Mr. Hopkins discharged a firearm at his wife,[1] which under § 4A1.1 added two criminal history points; and 3) a 2000 misdemeanor simple assault conviction in which his wife reported he "beat the hell" out of her by grabbing her hair, throwing her to the ground, kicking her in the face, and beating her, which added one more criminal history point under § 4A1.1. Mr. Hopkins's criminal history category of III, together with an offense level of fifteen, resulted in an advisory Guidelines sentencing range of twenty-four to thirty months imprisonment.

---

[1] During the same incident, after discharging the gun Mr. Hopkins also pointed the weapon at his wife's head, but the gun failed to fire.

The probation officer also outlined Mr. Hopkins's numerous health problems, including the fact he takes five medications a day and suffers from: 1) congestive heart failure following three heart attacks and the implant of a defibrillator and stents; 2) a pancreatic condition; 3) post-traumatic stress disorder related to his service in Vietnam; 4) depression; 5) alcoholism; 6) passing out; and 7) headaches. The probation officer also outlined other factors which could warrant a departure from the applicable Guidelines range, including the possibility his criminal history, pursuant to U.S.S.G. § 4A1.3, under-represented both the seriousness of his past criminal conduct and the likelihood he would commit other crimes and the fact he discharged the firearm in commission of the offense, which, under § 5K2.6,[2] could warrant an increase. The probation officer also pointed out Mr. Hopkins committed multiple assaults with two weapons (i.e., the knife and firearm), but only one aggravated assault was included in calculating the offense level and no enhancement was added for either the discharge of the weapon or the actual stabbing injury to Mr. Hopkins's stepson.

Other than one clarification, neither party filed objections to the presentence report. However, prior to sentencing each party filed a motion for departure. The government filed a motion for an upward departure based on: 1)

---

[2] The presentence report inadvertently refers to § 5K2.7, rather than § 5K2.6, which is the provision suggesting discharge of a firearm might warrant a substantial sentence increase.

the under-representation of Mr. Hopkins's criminal history due to his previous, repeated violent attacks on his spouse in the presence of his stepsons and the likelihood he would re-offend against the same family members; 2) his violent conduct toward family members during the instant offense which, but for providence, could have resulted in a more tragic event; 3) his alarming statements and lack of remorse following his arrest; and 4) the fact only one assault in the current incident was taken into account in the offense level and no enhancement was added for the discharge of the weapon or the actual stabbing injury.

In turn, Mr. Hopkins filed a motion for a downward departure under U.S.S.G. § 5H1.1 based on his age of fifty-nine and also under U.S.S.G. § 5H1.4 for his poor medical condition. In support, Mr. Hopkins elaborated on his medical problems, as outlined in the presentence report, and added that he also suffers from hyperlipidemia and anxiety and is likely to have a short life expectancy based on his combination of health problems. He also attached six medical admission notes to substantiate his health problems. He argued these combined factors warranted a downward departure resulting in a sentence below the advisory Guidelines range.

At the sentencing hearing, Mr. Hopkins's counsel renewed his request for a downward departure, reiterating the same arguments and suggesting a sentence of

eighteen months would be sufficient under the circumstances presented. In turn, the government renewed its request for an upward departure and requested a sentence between forty-one and fifty-one months imprisonment. During the discussion of his medical problems, the district court actively participated in the colloquy, noting Mr. Hopkins's heart problems involved the need for a defibrillator and agreeing his incarceration would entail "a lot" of medical care. The district court also acknowledged Mr. Hopkins made "some very compelling arguments" concerning his request for a downward departure based on his age, health, and short life expectancy.

In addition, the district court participated in a colloquy with both Mr. Hopkins and his counsel concerning his prior criminal history of three misdemeanors, including the previous misdemeanor conviction for discharge of a firearm toward his wife, which Mr. Hopkins told the district court occurred because he threw the firearm down on the ground. While admitting he possessed some anger management problems, Mr. Hopkins and his counsel also suggested the description of the instant offense, including the superficial stabbing wound to his stepson, was overstated.

In response, the district court judge explained what he found "most persuasive" and relevant for an "upward departure" were the statements made by

Mr. Hopkins at his booking; i.e., "If I would have known it would come to this, I would of killed all the fuckers. I mean it's the same in the end, isn't it?" and "If I got out of here now, shouldn't I just go back and shoot every one of them?" R., Vol. 2 at 12-13; Vol. 3 at 2 (¶ 6). After reciting these statements, the judge noted they were alarming and indicated extreme danger because they occurred after Mr. Hopkins had time to cool down. Mr. Hopkins then provided the district court his explanation for stabbing his stepson, which he premised, in part, on their past difficulties with each other, including his stepson's own threatening and physical behavior and disobedience towards him and his mother, as well as his stepson's large physical size and the fact the other stepson possessed a gun when the incident occurred. In response, the district court judge made the following statement:

> I really understand and I sympathize with your health problems. I don't happen to think you're very old, but that's perhaps just my point of view. However, listening to you here today, I don't see a whole lot of remorse. And then reading the description of this incident, which I'll accept that your stepson is a larger man with his own violent tendencies, your response of jabbing him in the stomach and then shooting through the door when you say that you were just trying to get out, and then you shoot to get in, and your comments that you made at booking, all tie in with your history, particularly paragraphs 22 and 23,[3] where I frankly wonder about the story that the gun just flew through the air. I think you are a very dangerous man, and the danger extends mainly to your wife and family.

---

[3] These paragraphs in the presentence report pertain to: 1) the 1998 incident where Mr. Hopkins discharged a firearm at his wife and then pointed the gun at her head, but the gun failed to fire; and 2) the 2000 incident in which Mr. Hopkins's wife reported he "beat the hell" out of her.

R., Vol. 2 at 16-17.

> The district court then imposed the sentence, stating:
>
> I think that now that we're on a level 15, with criminal history three, that an appropriate departure is two over to a 37, 46.[4]  And I believe that for the reasons I've just stated, that a commitment and sentence of 46 months is appropriate.  And it really will serve, I hope, to protect the community, most particularly your loved ones, or at least those who are within your family, from you, and perhaps you from your own violence.
>
> I do strongly recommend, however, that you be placed in an institution where you can receive your needed medical care.  And that before you are placed anywhere, that you be evaluated for your medical needs.

*Id.* at 17.  In imposing the sentence, the district court also directed Mr. Hopkins to participate in domestic violence and alcohol treatment programs.

### III.  Discussion

On appeal, Mr. Hopkins argues the upward departure increasing his sentence above the Guidelines range is unreasonable because he only had three misdemeanor convictions and the aggravating factors involved in his instant crime were fully accounted for in assessing a four-level increase in his offense level. In addition, he contends the district court should not have given significant weight to his statements following the incident because they did not imply a

---

[4]  An offense level of fifteen, together with a criminal history category of V, results in a Guidelines range of thirty-seven to forty-six months imprisonment. *See* U.S.S.G. ch. 5, pt. A (Sentencing Table).

current threat, were made almost contemporaneously with his arrest, and the district court seemed to acknowledge they may have risen from his mental health issues. He also suggests his statements to the district court at sentencing should not warrant a significant increase as he was trying to explain he felt threatened by his stepsons at the time of the instant offense and did not intend to shoot anyone. Finally, Mr. Hopkins argues the district court inappropriately failed to weigh his undisputed and significant health problems which should have been considered as mitigating factors in sentencing him. In making this argument, Mr. Hopkins relies on 18 U.S.C. § 3553 and suggests a downward departure should have been given based on U.S.S.G. §§ 5H1.1 and 5H1.4 due to his elderly age and extraordinary physical impairment.

The essence of Mr. Hopkins's appeal argument is three-fold: 1) his sentence is unreasonable because the district court improperly departed upwards; 2) the district court improperly denied his request for a downward departure under the Chapter Five Guidelines; and 3) his sentence is unreasonable under the § 3553(a) factors based on his age and health. We begin our discussion by clarifying that a sentence above or below the recommended Guidelines range based on an application of Chapters Four or Five of the Guidelines is referred to as a "departure," while a sentence above or below the recommended Guidelines

range through application of the sentencing factors in 18 U.S.C. § 3553(a)[5] is called a "variance." *United States v. Atencio*, 476 F.3d 1099, 1101 n.1 (10th Cir. 2007) (en banc request denied). We lack jurisdiction "to review a district court's discretionary decision to deny a motion for downward departure on the ground that a defendant's circumstances do not warrant the departure." *United States v. Sierra-Castillo*, 405 F.3d 932, 936 (10th Cir. 2005). We review a denial of a downward departure only if the denial is based on the sentencing court's interpretation of the Guidelines as depriving it of the legal authority to grant the departure. *See United States v. Fortier*, 180 F.3d 1217, 1231 (10th Cir. 1999). "A district court is presumed to understand that it has discretion to downwardly depart unless the court unambiguously states that it lacks such discretion."

---

[5]  18 U.S.C. § 3553(a) provides, in part, the court shall consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed--
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available; ...
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

*Sierra-Castillo*, 405 F.3d at 936. In this case, absent any indication to the contrary, we presume the district court understood its discretion, and therefore we lack jurisdiction to review the district court's denial of Mr. Hopkins's motion for a downward departure.

While we lack jurisdiction regarding the district court's denial of a downward departure, it is evident Mr. Hopkins is now also claiming his sentence is unreasonable under the § 3553(a) factors based on the same age and health issues he previously raised to support his downward departure request under U.S.S.G. §§ 5H1.1 and 5H1.4. While Mr. Hopkins did not previously frame his objections expressly in the context of a variance under § 3553(a), we do not require a defendant to make such an objection in order to preserve a claim his sentence is unreasonably long under those factors. *See United States v. Torres-Duenas*, 461 F.3d 1178, 1183 (10th Cir. 2006), *petition for cert. filed* (Nov. 22, 2006) (No. 06-7990). Instead, we review for reasonableness the sentence's length, as guided by the factors in 18 U.S.C. § 3553(a). *See id.* These factors "include the nature of the offense and characteristics of the defendant, as well as the need for the sentence to reflect the seriousness of the crime, to provide adequate deterrence, to protect the public, and to provide the defendant with needed training or treatment ...." *United States v. Kristl*, 437 F.3d 1050, 1053 (10th Cir. 2006) (*per curiam*).

-12-

We require reasonableness in two respects – "the length of the sentence, as well as the method by which the sentence was calculated." *Id.* at 1055 (emphasis omitted). In determining whether the district court properly applied the applicable Guidelines, we review its legal conclusions de novo and its factual findings for clear error. *Id.* at 1054. We have also held "the sentencing factors set forth in 18 U.S.C. § 3553(a) must be considered by the district court itself when imposing a sentence." *United States v. Sanchez-Juarez*, 446 F.3d 1109, 1115 (10th Cir. 2006).

> [W]here a defendant has raised a nonfrivolous argument that the § 3553(a) factors warrant a below-Guidelines sentence and has expressly requested such a sentence, we must be able to discern from the record that the sentencing judge did not rest on the guidelines alone, but considered whether the guidelines sentence actually conforms, in the circumstances, to the statutory factors.

*Id.* at 1117 (quotation marks, alterations and citation omitted).

With these principles in mind, we turn to Mr. Hopkins's age and poor health, which are but two of the § 3553(a) factors the district court was required to consider. It is clear the district court weighed both Mr. Hopkins's age and health issues as well as the other § 3553(a) factors, such as the serious nature of his offense and his other characteristics and history, including: 1) the violent nature of the instant offense, in which he wielded two weapons, stabbed his stepson, and shot at the door; 2) his apparent lack of remorse for his actions; 3)

his prior convictions involving extremely violent behavior towards his wife; and 4) his alarming and extremely threatening statements at the time of his booking which were not contemporaneous but occurred after he had time to "cool off." The district court also weighed Mr. Hopkins's health problems against the need for his sentence to reflect the seriousness of the crime, to provide adequate deterrence, to protect the public, and to provide him with needed treatment. In that regard, it explained it believed a forty-six-month sentence was appropriate to protect the community, Mr. Hopkins's family, and Mr. Hopkins himself from his own violence; recommended he be evaluated and placed in an institution where he could receive needed medical care; and directed he participate in domestic violence and alcohol treatment programs. In addition, the district court explained that, at the age of fifty-nine, Mr. Hopkins was not very old. Under the circumstances presented, we cannot say Mr. Hopkins has demonstrated his age and health, when viewed in light of the other § 3553(a) factors, are sufficiently compelling for the purpose of making his sentence unreasonable.

As to Mr. Hopkins's argument concerning his upward departure, we review any legal questions presented de novo and the factual findings for clear error, giving due deference to the district court's application of the Guidelines to the facts. *See United States v. Pettigrew*, 468 F.3d 626, 639-40 (10th Cir. 2006), *cert. denied*, 127 S. Ct. 1343 (2007). When reviewing upward departures, we

employ a four-part test as to whether: 1) the factual circumstances supporting the departure are permissible departure factors; 2) the departure factors relied on by the district court remove the defendant from the applicable Guidelines heartland, thus warranting a departure; 3) the record sufficiently supports the factual basis underlying the departure; and 4) the degree of departure is reasonable. *See United States v. Wolfe*, 435 F.3d 1289, 1295 (10th Cir. 2006).

All of these steps are subject to an abuse of discretion standard. *See id.* "This standard limits appellate courts' scope of review, leaving district courts with much of their traditional sentencing discretion." *Id.*

> In the usual case, where the court's decision whether to depart rests on factual findings, the district court's decision is entitled to substantial deference. If, however, the district court's decision rests primarily on a legal conclusion, for instance whether a factor is a permissible ground for departure, the appellate court's review is plenary.

*Id.* In determining the degree of an upward departure, the district court is required to "precisely lay out its reasoning and analysis as to why it is selecting a particular degree of departure" sufficient to "give us reasonable indicia that the sentence the district court pronounces is proportional to the crime committed." *United States v. Proffit*, 304 F.3d 1001, 1012 (10th Cir. 2002) (quotation marks and citation omitted). Ordinarily, "[t]he district court accomplishes this task by using any reasonable methodology hitched to the Sentencing Guidelines to justify

the reasonableness of the departure." *Id.* (quotation marks and citation omitted).

With these principles in mind, we turn to the Guidelines applicable in this case. Generally, under U.S.S.G. § 5K2.0, the Guidelines permit a departure based on aggravating or other circumstances which are not adequately taken into account elsewhere in the Guidelines. One explicit example of a circumstance not taken into account is the discharge of a firearm, which may warrant a "substantial sentence increase" under § 5K2.6. Similarly, under U.S.S.G. § 4A1.3, an upward departure may be applicable if the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes.

In this case, the district court precisely laid out its reasoning for an upward departure and, in so doing, outlined circumstances not taken into account by the presentence report, which are permissible circumstances warranting an upward departure under Chapter Five of the Guidelines. The district court also explained Mr. Hopkins's criminal history under-represented the seriousness of his prior actions toward his family and the likelihood he would continue to commit similar crimes against his family, which also constitute permissible grounds for an upward departure under § 4A1.3 of the Guidelines. Thus, the district court did not abuse its discretion in determining the factual circumstances involved are

permissible upward departure factors.

The district court also did not abuse its discretion in determining Mr. Hopkins's case is outside of the Guidelines heartland. This is because at least two of his misdemeanor crimes were of a violent nature, including the discharge of a firearm at his wife and his brutal physical beating of her, which clearly remove him from the heartland of other criminal defendants committing misdemeanor crimes of a nonviolent nature. In addition, because his past conduct toward family members is similar to the instant offense, his case is outside the heartland of criminal defendants who are not likely to commit the same crime against the same victim. Finally, the record sufficiently supports the factual basis underlying the upward departure and, for the reasons outlined by the district court, we find no abuse of discretion in the degree of departure, which appears reasonable under the circumstances presented.

IV. Conclusion

For these reasons, we **AFFIRM** Mr. Hopkins's conviction and sentence.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge